**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CARLOS TERAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-2236-JAR |
| | ) |
| GB INTERNATIONAL, S.P.A., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Carlos Teran brings this lawsuit against GB International, S.P.A. ("GB International") and GB Miami, S.R.L. ("GB Miami") (collectively "Defendants"), asserting claims for breach of fiduciary duty, tortious interference with a business relationship, unfair competition, declaratory relief, and breach of contract.[1] After Defendants moved to dismiss his Complaint on jurisdictional grounds, the Court granted Teran's request to conduct limited discovery on the issue of personal jurisdiction. Teran was then granted leave to amend his Complaint, and this matter is now before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim (Doc. 55). For the reasons explained in detail below, the Court denies the motion on personal jurisdiction grounds, and grants the motion in part with respect to Plaintiff's breach of Shareholder Agreement and tort claims.

---

[1] In his First Amended Complaint, Plaintiff drops as a defendant GB Italy and adds American Crane and Tractor Parts, Inc. ("ACTP"). To date, Plaintiff has not obtained service upon ACTP, nor has it entered an appearance in this action.

**I.     Background**

The following facts are derived from the First Amended Complaint. Teran has been in the tractor part supply business for decades, with a sales concentration and strong relationships in South, Central, and Latin America. Starting in June 2002, Teran formed, owned and operated a successful tractor part supply company, Teran Tractor.

Defendants are foreign corporations organized under the laws of Italy. On January 9, 2004, GB International entered into a Supply Agreement with American Crane and Tractor Parts, Inc. ("ACTP"), a Missouri corporation, that requires ACTP to purchase certain products from GB International, provided that the price did not exceed other sources by more than 15%.[2]

In April 2005, GB International purchased a 65% ownership of Teran Tractor, with Teran holding the remaining 35%. The perceived benefits to Teran Tractor from this transaction included the advantages of greater exposure from a bigger organization, introduction into new markets, and purchasing power efficiencies. In January 2004, prior to acquiring a controlling share in Teran Tractor, GB International purchased 65% of ACTP, a competitor of Teran Tractor. ACTP's strength was in the North American market, and they lacked Teran Tractor's connections and sales in South, Central, and Latin America. GB International also owned other companies in the tractor supply industry, including CGR, an Italian manufacturer of tractor supply parts that had little penetration or market share anywhere in the Americas.

Previously, Teran Tractor and ACTP discussed a merger of the two companies, and during the due diligence period shared confidential information with each other that included pricing data, sourcing data and customer information. Soon after GB International purchased

---

[2]Doc. 54, Ex. A.

Teran Tractor, and while the two subsidiaries were still separate, ACTP began to use confidential information it obtained during the due diligence process to undercut Teran Tractor's prices in an effort to steal away some of Plaintiff's market share in Latin America.

In November 2006, Teran Tractor and ACTP were merged, and began operating under ACTP's name; Teran Tractor remained only as a brand name. Plaintiff objected to the merger, but did not possess sufficient voting authority to stop it from occurring. On November 9, 2006, Teran entered into the Second Amended and Restated Shareholders Agreement ("Shareholders Agreement") with GB International, GB Miami and three individual shareholders in the newly-merged ACTP.[3] The individual shareholders, Jeffrey Weiner, Harry Pennington and Kenneth Stacy, were also employees of ACTP. At the time of the merger, Teran's 35% share was worth approximately $4.5 million.

Also on November 9, 2006, Teran entered into an Employment Agreement with ACTP, under which he served as ACTP's Managing Director of the Latin American markets.[4] The term of the Employment Agreement was until April 30, 2015.

Pursuant to a Redemption Agreement entered into on November 10, 2006, between GB International and ACTP, GB International exercised its right to require ACTP to redeem the 692.723 shares of ACTP stock that GB International's affiliate, GB Miami, received as part of the merger.[5] GB International took cash in the amount of $4.255 million for GB Miami's shares and forced Teran to take shares of ACTP instead of cashing out. Teran thereafter owned a 5.8%

---

[3] *Id*., Ex. B.

[4] *Id*., Ex. E.

[5] *Id*., Ex. G.

interest in ACTP, but had no ownership interest in GB International. This cash-out was orchestrated by Filippo Borghi, the largest shareholder and titular head of GB International and Chairman of the Board of ACTP. As a result of the cash-out, ACTP was further leveraged and was devalued by the amount of cash taken out for the benefit of GB International.

At the time of the merger, ACTP had four shareholders in addition to Teran, making it a closely held company. Pursuant to the Shareholders Agreement, GB International was permitted to designate four of seven members of the Board of Directors of ACTP.

After the merger, GB International over time systematically engaged in practices that caused significant losses to ACTP and diminished the competitive edge that it had gained through its own efforts and those added by the merger with Teran Tractor. As a direct result of these practices, it became virtually impossible for ACTP to remain profitable. These activities were undertaken to benefit GB International and CGR at the expense of ACTP and thus, Plaintiff, and included unreasonable ordering restrictions and requirements, purchase prohibitions, and minimum price requirements under the Supply Agreement. These activities were part of a scheme employed by GB International to boost the revenues and profitability of CGR, to which GB International had direct obligations and certain of its principals had personal guarantees, and whose strong balance sheet and profitability was critical to both the continued expansionist ambitions of GB International in Italy and as its goal to eventually take the Italian company public. The actions by GB International led ACTP to lose customers, including numerous customers in Latin America that were brought in by Teran. Teran complained repeatedly to GB International and its owners about the poor business practices that it engaged in and the fact that it was damaging ACTP's ability to work competitively and make a profit, but

4

his complaints were ignored.

>Section 2.9(B)(d) of the Shareholders Agreement states, in part:
>
>>If the Company [ACTP] terminates the employment of [Teran] within ten (10 years of April 29, 2005 "with cause" . . . or if [Teran] terminates the Carlos Employment Agreement under paragraph 5(a) of such agreement within ten (10) years of April 29, 2005, <u>then</u>, in each case, GB Miami shall have a call right, exercisable immediately, and continuing thereafter, for a total purchase price of One Dollar ($1.00) for all of [Teran's] ownership in the Company; . . .

On July 25, 2010, Teran severed his employment relationship with ACTP effective October 29, 2010, for reasons directly related to the manipulations and improper activities directed by GB International.[6] On September 16, 2010, notice was sent to Teran stating that GB Miami was exercising its Call Right under Section 2.9(B)(d) of the Shareholders Agreement and was purchasing Teran's 373.005 shares of ACTP for a total purchase price of $1.00.

On October 29, 2010, ACTP offered Teran a new position with the company, and on that date he executed a letter accepting the new employment agreement.[7] On December 1, 2010, Paul King, President of ACTP, sent a letter to Teran stating that the company was exercising its Call Right for $1.00.[8] Teran declined to accept the Call Right because his severance of his 2006 Employment Agreement did not ultimately occur on October 29, 2010, as a new employment agreement was entered into that day, and GB Miami's purported exercise of its Call Right was invalid, since Section 2.9(B)(d) of the Shareholders Agreement could only be invoked if Teran terminated the 2006 Agreement.

---

[6] *Id.*, Ex. D.

[7] *Id.*, Ex. F.

[8] *Id.*, Ex. C.

5

Teran subsequently terminated the new employment agreement with ACTP effective December 23, 2010. Teran's shares at the time he left ACTP had a value of zero. The same shares were worth approximately $2,191,000 at the time of the merger. But for GB International's scheme to benefit itself at the expense of ACTP, Teran alleges that his shares would have a value in excess of $6 million, and he would have received yearly dividends in excess of $200,000.

Section 5.2 of the Shareholders Agreement contains a forum selection provision that states:

> Governing Law and Consent to Jurisdiction. (a) This Agreement shall be governed by and construed in accordance with the internal substantive laws and not the choice of law rules of the State of Kansas.
>
> (b) Any and all disputes with respect to this Agreement must be brought in the form of a judicial proceeding in the District Court of Wyandotte County, Kansas, or in the United States District Court sitting in Kansas City, Kansas, and by execution and delivery of this Agreement, each party (I) accepts, generally and unconditionally, the exclusive jurisdiction of such courts and any related appellate court, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement and (ii) irrevocably waives any objection it may now or hereafter have as to the venue of any such suit, action or proceeding brought in such a court or that such court is an inconvenient forum.[9]

Teran brings five claims against Defendants: Breach of Fiduciary Duty (Count I); Tortious Interference with Business Relationships (Count II); Unfair Competition (Count III); Declaratory Judgment seeking a declaration that his employment with ACTP was not terminated, that GB Miami did not have the right to repurchase his shares of stock for $1.00, that the

---

[9]*Id.*, Ex. B, at 19–20.

repurchase provision of the Shareholders Agreement s unconscionable and that he is the beneficial owner of the stock entitled to all benefits and distributions (Count IV); and Breach of the Shareholders Agreement (Count V).

## II. Discussion

### A. Personal Jurisdiction

Plaintiff has the burden of establishing personal jurisdiction over defendant.[10] In the absence of an evidentiary hearing, plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[11] "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[12] Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[13] When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[14] The court resolves all factual disputes in favor of the plaintiff.[15] Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the

---

[10] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[11] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[12] *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[13] *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985).

[14] *Pytlik*, 887 F.2d at 1376.

[15] *Dudnikov*, 514 F.3d 1070.

moving party."[16] "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[17]

Defendants argue that Plaintiff's breach of Shareholders Agreement claim provides the only legitimate argument for assertion of any personal jurisdiction over Defendants. Defendants urge that, because the breach of Shareholders Agreement claim theory fails on its face, there is no personal jurisdiction over them at all. Plaintiff responds that Defendants' challenge to his breach of Shareholders Agreement claim improperly requires him to prove the merits of his claim before he is allowed to utilize the jurisdictional consent provision in the Shareholders Agreement. The Court agrees. In order for the Court to determine that Plaintiff's breach of Shareholders Agreement count fails to state a claim upon which relief can be granted, it must have jurisdiction over the parties. Thus, the Court must first determine whether the forum selection provision is enforceable.

A party who consents to jurisdiction in a forum selection clause waives any due process claims.[18] The Supreme Court has held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[19] To overcome the presumption that a forum selection provision is valid, a party must make "a showing of inconvenience so serious as to foreclose a remedy,

---

[16]*Behagen*, 744 F.2d at 733.

[17]*OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[18]*Carnival Cruise Line, Inc. v. Shute*, 499 U.S. 585, 590 (1991).

[19]*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992).

8

perhaps coupled with a showing of bad faith, overreaching or lack of notice."[20]

Defendants do not dispute the validity of the forum selection provision with respect to the breach of Shareholders Agreement claim, beyond the circular argument that the claim does not have merit, and therefore the Court does not have jurisdiction. Nor do Defendants dispute, or even discuss, the validity of the forum selection provision with respect to Plaintiff's declaratory judgment action regarding the parties' rights under the Agreement. They do contend, however, that the forum selection provision does not apply to Plaintiff's tort claims against Defendants. The Court disagrees. Although the Tenth Circuit has not addressed this issue, the Supreme Court has applied a forum selection provision in a case involving tort claims.[21] Other Circuit courts have also held that where tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are covered by a contractually-based forum selection clause, despite the "pleading of alternative non-contractual theories of liability."[22] In this case, the Court finds that Plaintiff's tort claims, which he brings in his individual capacity directly against Defendants, are related to his contract and declaratory judgment claims because they involve the same operative facts and will require the fact-finder to determine the terms of the Shareholders Agreement and whether Defendants complied with those terms, and whether Defendants, as majority shareholders, manipulated or interfered with that Agreement to the detriment of ACTP and Plaintiff. The broad language of the forum selection provision covers

---

[20]*Riley*, 969 F.2d at 958.

[21]*Carnival Cruise Line*, 499 U.S. at 588.

[22]*See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds*, *Lauro Lines v. Chasser*, 490 U.S. 495 (1989)); *Lambert v. Kysar*, 983 F.2d 1110,, 1121-22 (1st Cir. 1993) (holding that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.").

9

"any and all disputes with respect to this Agreement," further supporting the conclusion that it is broad enough to include Plaintiff's tort claims against Defendants.[23] Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.[24]

### B. Failure to State a Claim

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[25] Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[26] The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[27] As the Supreme Court explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[28] Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that

---

[23] *See Mann v. Auto. Prot. Corp.*, 777 F. Supp. 2d 1234, 1242-43 (D. N.M. 2011) (finding a forum selection clause stating that "any legal action regarding this Agreement" encompassed tort claims).

[24] Because the Court finds the forum selection clause to be dispositive of this question, it does not consider Defendants' constitutional argument as to personal jurisdiction.

[25] *Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

[26] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[27] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008). "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

[28] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 2009 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [29]

### 1. Breach of Shareholders Agreement

The Shareholders Agreement states that the Agreement shall be governed by Kansas law, and the parties agree that Kansas law applies to Plaintiff's breach of Shareholders Agreement claim. In Kansas, the elements of a breach of contract claim are: 1) the existence of a contract between the parties; 2) sufficient consideration to support the contract; 3) plaintiff's performance or willingness to perform in compliance with the contract; 4) defendant's breach of the contract; and 5) damages to plaintiff caused by the breach.[30]

As an alternative to his declaratory judgment action, Plaintiff alleges two breaches of the Shareholders Agreement: 1) GB Miami's conduct in exercising its Call Right to purchase Plaintiff's shares in ACTP for $1.00, and 2) Defendants' conduct in "allowing ACTP to continuously lose money and leave no profit margin or real revenues from which to pay minority shareholders, including Teran." Defendants argue that neither of these allegations of breach is sufficient to state a claim because Plaintiff admits in his Complaint that he resigned from his November 9, 2006, Employment Agreement with ACTP, which triggered the Call Right, and because there is no provision in the Shareholders Agreement that has been breached as a result of Defendants continuously allowing ACTP to lose money.

The Court agrees in part. Contrary to Defendants' contention that he admits he resigned from the November 6, 2006, Employment Agreement, Plaintiff specifically contends that

---

[29]*Id.*

[30]*City of Andover v. Sw. Bell Tel. L.P.*, 153 P.3d 561, 565 (Kan. Ct. App. 2007).

Agreement ceased to exist and was superceded by the October 10, 2010 new Agreement and that by entering into the new Agreement, Defendant gave up the Call Right. Plaintiff further asserts that since the Call Right could not have come into effect until the October 29, 2010 effective date of the severance of his employment with ACTP, and that termination did not occur since a new employment agreement was entered into on that day, the Call Right never became effective. Accordingly, the Court finds that Plaintiff has sufficiently pled a plausible breach of contract claim with respect to his allegation that the condition for GB Miami's exercise of the Call Right never came into effect.[31]

The Court reaches a different conclusion with respect to Plaintiff's second allegation of breach. Plaintiff contends that Defendants' conduct in allowing ACTP to lose money constitutes a breach of Section 1.3 of the Shareholders Agreement, which provides that "any amendment or modification by the Company of the Supply Agreement" "shall require the consent of the Board of Directors and the approval of the Continuing Shareholders," and thus Defendants' actions essentially constitute improper modifications or amendments to the Supply Agreement referenced in Section 1.3(b). Plaintiff acknowledges that this claim should be more particularly plead. The Court will dismiss this second allegation without prejudice to permit Plaintiff to seek leave to amend this claim, to allege additional supportive facts.

   2.   **Tort Claims**

In his response, Plaintiff withdraws his unfair competition claim, leaving claims for breach of fiduciary duty and tortious interference with a business relationship. Defendants argue that Plaintiff's remaining tort claims should be dismissed because they should have been brought

---

[31]Plaintiff withdraws his related claim that GB Miami did not own shares of ACTP stock at the time it exercised the Call Right.

as derivative actions, not by Plaintiff in his personal capacity and, alternatively, that Plaintiff fails to properly plead the essential elements of these claims. Both issues require this Court to first determine what substantive law applies to Plaintiff's claims.

*Choice of Law*

In a diversity case such as this, the substantive law of the forum state, including the forum state's choice of law rules, are applied.[32] Focusing on the tortious nature of his claims, Plaintiff invokes the general rule of *lex loci delicti* and argues that Florida law applies because he suffered damages in Florida, where he resides.[33] But the Court agrees with Defendants' argument that Plaintiff's claims center on the internal affairs of ACTP, and in essence challenge the soundness with which ACTP has been managed and the oppressive conduct of Defendants as the majority shareholders. Because Plaintiff's claims rely on the duties and relationships defined in corporate law, "the [C]ourt must look to Kansas' corporate conflicts of law rule and not to its general tort conflicts of law rule."[34] In Kansas, "[t]he generally accepted rule is that a corporation's charter and the laws of its domicile govern with respect to . . . the rights and liabilities of its officers, stockholders, and directors."[35] Because Plaintiff's tort claims are based on the purported mis-governance of ACTP, a Missouri corporation, the Court applies Missouri law.

---

[32]*See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

[33]*Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985).

[34]*Jayhawk Capital Mgmt, LLC v. LSB Indus., Inc.*, 2012 WL 4210462, at *7 (D. Kan. 2012) (quoting *Brown v. Mailman*, 1995 WL 716785, at *3 (D. Kan. Nov. 13, 1995) (holding that Missouri law applied to the plaintiff's breach of fiduciary duty claim because "it is corporate law that defines the contours of that duty")).

[35]*Id*. (citing *Consol. Beef Indus., Inc. v. Schuyler*, 716 P.2d 544, 547 (Kan. 1986), *accord Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 337 F. Supp. 2d 1243, 1250 (D. Kan. 2004)).

*Derivative Nature of Claims*

Defendants move to dismiss Plaintiff's breach of fiduciary duty and tortious interference claims to the extent these causes of action allege derivative claims. Defendants contend that Plaintiffs may not assert such claims as an individual or direct action, but must assert them as a derivative action. As cited by Defendants, the courts of Missouri have established the general rule a corporate shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property.[36] This is because the injury flowing from such breach is to the corporation, *i.e.*, to the shareholders collectively, and not to the shareholders individually.[37] Defendants do not acknowledge, however, that an exception to this general rule exists, permitting an individual rather than derivative action, "[w]here a complaint relates to the direct injury of the plaintiff."[38] "Whether a suit may be brought as an individual action or only as a derivative suit on behalf of the corporation turns on whether the plaintiff has suffered an injury distinct from that suffered by the corporation."[39] Thus, the difficult part of the analysis lies in characterizing the injury claims.[40] "In determining whether or not an injury is direct as to the individual or indirect as to the corporation, a court must look to the body of the complaint and the gravamen of the injuries asserted."[41] "If the damages at issue are only indirectly

---

[36] *Cook v. Cook*, 143 S.W.3d 709, 711 (Mo. Ct. App. 2004).

[37] *Clockwork Home Servs., Inc. v. Robinson*, 423 F. Supp. 2d 984, 990 (E.D. Mo. 2006) (citing *Dawson v. Dawson*, 645 S.W.2d 120, 125 (Mo. App. 1982)).

[38] *Id*.

[39] *Arent v. Distrib. Sciences, Inc.*, 975 F.2d 1370, 1374 (8th Cir. 1992) (citation omitted).

[40] *Clockwork*, 423 F. Supp. 2d at 990 (citing *Gray v. Bicknell*, 86 F.3d 1472, 1487 (8th Cir. 1996)).

[41] *Id*. at 990--91 (quoting *Gill v. Three Dimension Syst., Inc.*, 87 F. Supp. 2d 1278, 1286 (M.D. Fla. 2000)).

14

sustained by the stockholder as a result of injury to the corporation, the stockholder does not have a cause of action as an individual."[42]

In this case, Plaintiff asserts that Defendants sought to benefit themselves at the expense of ACTP, and that Defendants' actions caused ACTP to lose customers, which in turn damaged ACTP's ability to work competitively and make money. Plaintiff alleges that Defendants' actions impacted the value of ACTP's stock, and claims that at the time he left ACTP, his shares in the company should have had a value in excess of $6 million, instead of zero. Plaintiff asserts that many of the customers lost by ACTP were brought in by him, including Todo Tractor, Cadeco, Fernandez Insua, Roda Prensa and D & D, and that Defendants' actions caused him to lose money and miss business opportunities.

The Court finds that Plaintiff has failed to allege any facts tending to establish that he has been harmed individually by Defendants' alleged misconduct. Instead, any improprieties on Defendants' part necessarily harmed ACTP, and only indirectly harmed Plaintiff in his capacity as a shareholder. Although Plaintiff makes much of the fact that the customers ACTP lost were brought in by Plaintiff as part of his customer base developed before the merger of Teran Tractor and ACTP, the fact remains that those customers belonged to ACTP. Plaintiff does not allege that he maintained his own customer base or explain how he incurred any separate damage as a result of his origination of these customers and thus, any action seeking relief must be brought derivatively.[43] Moreover, the requirement of pleading a derivative suit is not altered by the fact

---

[42]*Id.*

[43]*Id.* at 991. The Court notes that Plaintiff's 2006 Employment Agreement contains a Non-Competition clause, which prohibits Plaintiff from conducting activities in the business conducted by ACTP within North America, Central America, or Latin America for two years after termination of the Agreement. Doc. 54, Ex. E.

that Defendants are the majority shareholders of ACTP, and that Plaintiff may have been the only injured party.[44]

Plaintiff concedes that Florida law mirrors Missouri law requiring claims for damages to a corporation to be pursued derivatively,[45] but argues that the public policy exception for choice of law analysis applies in this case where Kansas law carves out an exception to that rule. As Plaintiff notes, there are circumstances in which Kansas courts apply Kansas law, notwithstanding that the tort occurred in another jurisdiction. Specifically, Kansas choice of law rules provide that Kansas courts will not apply the law of another state if such application is contrary to the settled public policy of Kansas.[46] A "mere difference between the local law rules of the two states will not render the enforcement of a claim created in one state contrary to the public policy of the other."[47] Instead, the public policy exception applies when the application of the other state's law would thwart or defeat the public policy objectives underlying the Kansas law.[48]

Plaintiff's argument is without merit. Kansas law embraces the general rule that a shareholder suit for injuries to a corporation as a result of officer or director misconduct, including self-dealing or breach of fiduciary duty, must be brought as a derivative action and not

---

[44]*Id.* at n.7 (citing *Peterson v. Kennedy*, 791 S.W.2d 459, 464 (Mo. App. 1990)).

[45]*See Karten v. Woltin*, 23 So.3d 839, 840 (Fla. Ct. App. 2009) ("Generally, a shareholder cannot sue in the shareholder's name for injuries to a corporation unless there is a special duty between the wrongdoer and the shareholder and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders.).

[46]*See, e.g., Hartford Accident & Indem. Co. v. Am. Red Ball Transit Co.*, 938 P.2d 1281, 1286 (Kan. 1997).

[47]*Prince Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1223 (10th Cir. 1991).

[48]*St. Paul Surplus Lines Ins. Co. v. Int'l Playtex, Inc.*, 777 P.2d 1259, 1269 (Kan. 1989).

a direct action unless the corporation is a closely held corporation and the plaintiffs can prove that the action will not unfairly expose the corporation to a multiplicity of action, or prejudice the corporation or interfere with individual shareholder recovery.[49] Although Teran asserts that Kansas law permits him to bring his tort claims in his individual capacity and Missouri and Florida law prevent him from doing so, the Court is not convinced that the differences between the laws rise to the level required for the public policy exception to apply. Although not as broad as the exception in Kansas, both Missouri and Florida laws also provide for exceptions to the general rule prohibiting an action by a shareholder against a corporation from being brought directly instead of as a derivative action,[50] and do not thwart or defeat the public policy objectives underlying the general rule regarding derivative actions. Accordingly, Plaintiff's breach of fiduciary duty and tortious interference claims, Counts I and II, are dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 55) is GRANTED in part and DENIED in part as follows:

1) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is DENIED;

2) Defendants' Motion to Dismiss for Failure to State a Claim is GRANTED in part. Plaintiff's tort claims set forth in Counts I and II, are DISMISSED; Defendants' Motion to Dismiss Plaintiff's breach of Shareholders Agreement claim set forth in Count V related to Defendants' exercise of the Call Right is DENIED; Plaintiff's breach of Shareholders Agreement claim related to Section 1.3(b) of the

---

[49] *See Lightner v. Lightner*, 266 P.3d 539, 548 (Kan. Ct. App. 2011).

[50] *See Karten*, 23 So.3d at 840; *Dawson*, 645 S.W.2d at 125.

Agreement is DISMISSED without prejudice to seek leave to amend.

**IT IS SO ORDERED.**

Dated: January 29, 2013

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE