IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLOS TERAN,                                )
                                             )
       Plaintiff,                        )
                                             )
vs.                                          )  Case No. 11-2236-JAR
                                             )
GB INTERNATIONAL, S.P.A.,                    )
GB MIAMI, S.R.L., and                        )
AMERICAN CRANE & TRACTOR                     )
PARTS, INC.,                                 )
                                             )
       Defendants.                       )
_____ )

**MEMORANDUM AND ORDER**

Plaintiff Carlos Teran brings this lawsuit against GB International, S.P.A. ("GB International") and GB Miami, S.R.L. ("GB Miami"), and American Crane & Tractor Parts, Inc. ("ACTP") (collectively "Defendants"), asserting derivative tort claims and individual capacity claims for declaratory relief and breach of contract. Defendant GB Miami also asserts a counterclaim for declaratory relief. This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 124). For the reasons explained below, the Court directs further briefing under Fed. R. Civ. P. 56(f)(2).

    **I.**    **Facts**

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff, the non-moving party. On November 9, 2006, Teran signed the Second Amended and Restated Shareholders Agreement (the "Shareholders Agreement"), an agreement among ACTP, GB International, GB Miami, and three individuals, including Teran. The Shareholders Agreement states in Section 2.9(B)(d):

> If the Company [ACTP] terminates the employment of Carlos [Teran] within ten (10) years of April 29, 2005 'with cause' (as defined in Section 5(d) of the Carlos Employment Agreement) <u>or if Carlos terminates the Carlos Employment Agreement under paragraph 5(a) of such agreement within ten (10) years of April 29, 2005</u>, then, in each case, GB Miami shall have a call right, exercisable immediately, and continuing thereafter, for a total purchase price of One Dollar ($1.00) for all of Carlos' ownership in the Company . . . .[1]

On November 9, 2006, Teran signed and initialed each page of the "Carlos Employment Agreement" referenced in the Shareholders Agreement.[2] Paragraph 5(a) of the Carlos Employment Agreement states:

> Termination. Employee's employment by the Company under this Agreement shall be terminated upon the earliest to occur in the following events:
> (a) Termination by Employee. Employee's resignation or other voluntary departure, in which case, he will no longer serve as an 'employee' or represent the Company from the date of such resignation or ceasing of services. . . .[3]

In a letter dated July 25, 2010, from Teran to ACTP, he stated that it was his "intention to sever [his] employment relationship with the Company effective at the end of the business day on October 29, 2010."[4] At the time Teran wrote the letter, the only employment he had with ACTP was under the Carlos Employment Agreement.

In response to Teran's letter, ACTP sent a letter dated August 5, 2010, in which it told Teran that his "resignation effective as of the end of the business day on October 29, 2010 is

---

[1] Doc. 129-1, Ex. B at 15 (emphasis added).

[2] *Id.*, Ex. C.

[3] *Id.*, ¶ 5(a).

[4] *Id.*, Ex. D.

accepted by the Company."[5] ACTP further explained that Teran's resignation triggered rights under the Shareholder Agreement, including GB Miami's right to purchase all of Teran's ownership in ACTP for the price of $1.00.[6] Teran testified that he did not pay attention to the part of the letter where ACTP explained that his resignation under the Carlos Employment Agreement effectuated the trigger of the $1.00 call right, and that he thought it was "just a formality."

By letter agreement dated October 29, 2010, ACTP extended an offer of employment to Teran, which stated that his employment would begin on November 1, 2010.[7] The letter further stated that Section 9 of the former [Carlos] Employment Agreement, the non-compete provision, will apply and continue in full force and effect. The employment was to be "at will," and ended by stating that Teran had until the end of the business day on October 29, 2010 to accept the offer. Teran accepted the offer and signed the letter agreement that date, and began the effective date of a new term of employment with ACTP on November 1, 2010.[8]

By letter dated December 1, 2010, ACTP informed Teran that GB Miami had exercised its call right under Section 2.9(B)(d) of the Shareholders Agreement and ACTP requested that Teran complete the closing of the sale by returning Teran's ACTP stock certificates.[9] Along with the December 1 letter, ACTP tendered to Teran the $1.00 payment amount called for in the

---

[5] *Id.*, Ex. E.

[6] *Id.*

[7] Doc. 138-5, Ex. E.

[8] *Id.*

[9] Doc. 125, Ex. F.

Shareholders Agreement.[10]  Teran refused to deliver the stock certificates, and on or about December 10, 2010, ACTP cancelled Teran's stock certificates and recorded the shares as transferred to GB Miami on ACTP's books.  Teran subsequently terminated the new employment agreement with ACTP effective December 23, 2010.

## II.     Discussion

Plaintiff asserts five counts in his Second Amended Complaint.  Counts I and II are tort claims that are asserted derivatively on behalf of ACTP, and stem from allegations that Defendants GB International and GB Miami, as majority shareholders of ACTP, harmed the company through their alleged control of ACTP's decision making.  Counts III and IV, which Plaintiff asserts in his individual capacity, both relate to GB Miami's exercise of its right to purchase all of Plaintiff's ACTP stock pursuant to its call right in Section 2.9(B)(d) of the Shareholder Agreement.  Count V is a breach of contract claim asserted in Plaintiff's individual capacity.  Defendants move for summary judgment on all five counts.  Defendant GB Miami also moves for summary judgment on its counterclaim for declaratory relief, seeking a declaration that GB Miami properly exercised its call right under Section 2.9(B)(d) of the Shareholders Agreement and that Teran ceased to own any shares in ACTP when it tendered the $1.00 purchase price; Defendant also seeks attorney's fees and costs of enforcing its contract rights.

### A.     Counts III and IV and Counterclaim—GB Miami Call Right

In Count III, Teran seeks a declaration that GB Miami did not have the right to purchase all of his shares in ACTP for $1.00 under Section 2.9(B)(d) of the Shareholders Agreement.

---

[10] *Id.*, Ex. G.

Alternatively, in Count IV, Teran claims that GB Miami breached the Shareholders Agreement by exercising the call right when it did not have the right to do so.

The Shareholders Agreement states that Kansas law governs, and the parties agree that Kansas law applies.  Generally, under Kansas law, if the language of a written contract "is clear and can be carried out as written, there is no room for rules of construction.  To be ambiguous, a contract must contain provisions of language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[11]  "'In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms.'"[12]  "'The cardinal rule of contract interpretation is that the court must ascertain the parties' intention and give effect to that intention when legal principles so allow.'"[13]  "Where a contract is complete and unambigous on its face, the court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parole evidence."[14]  Even if the parties' interpretation of the contract differ, the court need not resort to parole evidence to interpret the contract meaning if the contract is complete and unambiguous.[15]

Here, the dispute between the parties' interpretation of the unambiguous contract surrounds Section 2.9(B)(d) of the Shareholder Agreement and the letter agreement setting forth

---

[11]*Gore v. Beren*, 867 P.2d 330, 336 (Kan. 1994) (quotation omitted).

[12]*Wagnon v. Slawson Exploration Co.*, 874 P.2d 659, 666 (Kan. 1994) (quoting *Barnett v. Oliver*, 858 P.2d 1228, 1238 (Kan. Ct. App. 1993)).

[13]*Kay-Cee Enter., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 843 (D. Kan. 1999) (quoting *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 926 P.2d 669, 674 (Kan. Ct. App. 1996)).

[14]*Id*. (citing *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887–88 (Kan. 1992)).

[15]*See Decatur Cnty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 575 (Kan. 1999)).

Teran's November 1, 2010 employment with ACTP. Under the Shareholders Agreement, if the call right was triggered, GB Miami was entitled to exercise the call right by tendering an exercise notice and $1.00 to Teran. That triggering event, Defendants urge, is Teran's resignation, which they contend was effective October 29, 2010. It is undisputed that Teran wrote to ACTP on July 25, 2010 and stated his "intention to sever [his] employment relationship" under the Carlos Employment Agreement effective October 29, 2010, and that ACTP accepted that resignation to become effective October 29, 2010. On the effective date of his resignation, Teran entered into a letter agreement with ACTP that set out terms for a new employment arrangement, with a start date of November 1, 2010. Nevertheless, Teran argues that as a result of his new employment arrangement, his resignation from the Carlos Employment Agreement did not become effective October 29, 2010, because that agreement was superseded by the new employment agreement. Teran contends that his employment under the Carlos Employment Agreement did not terminate, because he and ACTP mutually agreed that he would continue to work for ACTP under a new employment agreement.

    By applying the principles used to interpret contracts under Kansas law, the Court finds that Defendants' interpretation is correct. ACTP formalized the end of Teran's employment under the Carlos Employment Agreement on October 29, 2010, thus triggering GB Miami's call right; the letter agreement setting forth the terms of his November 1, 2010 employment with ACTP clearly and unambiguously was a new contract of employment. Teran's interpretation of the letter agreement would require the Court to read terms into the agreement, specifically: that his previously-accepted resignation from the Carlos Employment Agreement was undone, and that his employment with ACTP would continue uninterrupted, but replaced by the terms of the

letter agreement. But the letter agreement makes no mention of these terms and the Court will not read the contract to have the effect Teran claims it has. "When the terms of the contract are plain and unambiguous the meaning must be determined by its contents alone and words cannot be read into the agreement which import an intent wholly unexpressed when it was executed."[16] The Court declines to rewrite the letter agreement to undo or supersede Teran's resignation.

Moreover, the language in the letter agreement supports Defendants' interpretation. Consistent with Teran's resignation having become effective October 29, 2010, the plain language of the letter agreement states that Teran's "employment will begin on November 1, 2010," three days after the date the letter was executed. Similarly, the letter states that ACTP was "pleased to extend the following offer of employment" to Teran. And, the letter agreement refers to the Carlos Employment Agreement as the "former" employment agreement between Teran and ACTP. Accordingly, the Court need not look any further than the plain terms of the letter agreement to conclude that Teran's employment under the Carlos Employment Agreement ended on October 29, 2010, and that a new employment agreement began on November 1, 2010. Indeed, Teran conceded as much during his deposition, but did not understand it at the time he entered the agreement, and did not pay attention to the terms of the agreement as he thought it was "just a formality." Kansas law is clear, however, that "[i]n the absence of fraud, mistake, or duress, a party who has fairly and voluntarily entered into such a contract is bound by its terms, regardless of the party's failure to read the contract or the inclusion of any terms in it which may be disadvantageous to that party."[17]

---

[16] *Wood v. Hatcher*, 428 P.2d 799, 804 (Kan. 1967).

[17] *Adams v. John Deere Co.*, 774 P.2d 355, Syl. ¶ 3 (Kan. Ct. App. 1989).

Accordingly, the undisputed facts show that because Teran resigned from the Carlos Employment Agreement effective October 29, 2010, GB Miami's to purchase his shares in ACTP for $1.00 was triggered.  This does not end the matter, however, as GB Miami also moves for summary judgment on its counterclaim, seeking a declaration that GB Miami properly exercised its  under Section 2.9(B)(d) of the Shareholders Agreement and that Teran ceased to own any shares in ACTP when it tendered the contractually-mandated $1.00 purchase price to Teran on December 1, 2010.  As Teran discusses extensively in his response, he asserted four affirmative defenses to the counterclaim, which Defendants fail to address in their initial brief in support of summary judgment: 1) the  is unconscionable; 2) prior breach of the Shareholders Agreement; 3) the unclean hands doctrine; and 4) waiver.  Defendants address the defenses for the first time in their reply brief.

Although the Court generally does not consider arguments raised for the first time in a reply, the record and argument before the Court indicate that Teran's affirmative defenses appear to lack merit.  Because Defendants did not advance their arguments regarding Teran's affirmative defenses in their motion for summary judgment, however, Teran is entitled to "notice and a reasonable time to respond" before the Court may grant summary judgment on this basis with respect to Defendants' counterclaim.[18]  In so ruling, the Court notes that resolution of this issue in Defendants' favor will impact Teran's derivative claims asserted in Counts I and II,[19] as an individual cannot maintain a derivative action on behalf of a corporation if that person is no

---

[18] Fed. R. Civ. P. 56(f)(2); *see also Coward v. Jabe*, 474 F. App'x 961, 963 (4th Cir. 2012) ("After giving notice and a reasonable time to respond, the district court may grant a motion for summary judgment on grounds not raised by a party. . . .").

[19] Defendants contend that Count V is also invalid because it too is derivative.

longer a shareholder in the corporation.[20]  In other words, Teran's standing to pursue his derivative claims is contingent on avoiding summary judgment on Defendants' counterclaim that GB Miami properly exercised its call right; if Teran is not a shareholder in ACTP, he has no standing to pursue derivative claims on behalf of ACTP.  The Court further notes that a ruling in Defendants' favor on this claim moots any alternative claim that it properly exercised a second call right under Section 2.9(B)(e) of the Shareholders Agreement in May 2013.  Accordingly, Teran is directed to file a sur-reply, no later than **fourteen (14) days** from the entry of this Order, stating why summary judgment should not be granted to Defendant GB Miami with respect to Teran's affirmative defenses to its counterclaim; Defendant shall have **fourteen (14) days** from the date of Teran's submission to file a sur-response.  In the interim, the case shall be removed from the April 6, 2015 trial calendar, pending review of the supplemental submissions.

**IT IS SO ORDERED.**

Dated: <u>January 16, 2015</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[20]*See Schwartz v. Custom Printing*, 926 S.W.2d 490, 494 (Mo. Ct. App. 1996) (holding that plaintiff's "standing as a shareholder—and the concomitant right to bring a shareholder derivative action—was abolished" as of the date plaintiff lost his shares); *K-O Enters., Inc. v. O'Brien*, 166 S.W.3d 122, 130 (Mo. Ct. App. 2005) (holding that shareholder "lost his standing to bring [a derivative] suit as of the date he was no longer a shareholder" of the corporation).